IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:23CR354 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTEN L. CLARK, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S MOTION TO |
| Defendant. | ) | WITHDRAW PLEA OF GUILTY |
| | ) | |

Now comes the United States of America, by and through counsel, Rebecca C. Lutzko, United States Attorney, and Peter E. Daly, Assistant United States Attorney, and hereby responds in opposition to Defendant Christen L. Clark's Motion to Withdraw Guilty Plea.  ECF # 43, PageID 200-204.  Defendant seeks to withdraw his guilty plea because he alleges that his prior counsel did not review the government's evidence with Defendant and did not explain the potential consequences of pleading guilty.  Because Defendant acknowledged having reviewed the government's evidence, and because the Court fully reviewed the terms of the plea agreement and advised Defendant of the potential consequences of pleading guilty on the record at the time of the plea, this Court should deny Defendant's motion to withdraw his plea of guilty.

## I.      Factual and Procedural Background

On June 2, 2023, investigators from the Federal Bureau of Investigation (FBI) Canton Safe Streets Task Force executed a federal search warrant at Defendant's residence, located at 1906 Lakeside Avenue NW, Canton, Ohio.  During the execution of the search warrant, investigators recovered approximately 7.6 kilograms of cocaine, 3.7 kilograms of fentanyl, 100

grams of methamphetamine, six firearms, and approximately $1,000,000 cash.  On June 29,
2023, a grand jury for the Northern District of Ohio returned an indictment charging Defendant
with conspiracy to possess with intent to distribute cocaine, methamphetamine, and fentanyl;
possession with intent to distribute cocaine; possession with intent to distribute fentanyl;
possession with intent to distribute methamphetamine; felon in possession of a firearm; and
possession of a firearm in furtherance of a drug trafficking offense.  ECF # 1, PageID 1-5.

Defendant appeared for arraignment before United States Magistrate Judge Jennifer
Dowdell Armstrong on July 6, 2023.  ECF Minutes of Proceedings, 7/6/23.  Defendant was
represented at that hearing by appointed counsel Kevin Spellacy.  *Id*.  On July 11, 2023, Attorney
Spellacy filed a Notice of Discovery Request.  ECF # 8, PageID 22-25.  On that same date,
Attorney James Hardiman filed a notice of appearance indicating that Defendant had retained
him to replace Attorney Spellacy.  ECF # 9, PageID 26.

On July 21, 2023, the United States provided initial discovery to Attorney Hardiman via
email.  That production included the following items:

- Fourteen (14) laboratory reports from the Canton-Stark County Crime Laboratory regarding the drugs seized from Defendant's residence, along with a statement of qualifications from Forensic Scientist Jennifer Creed;

- One (1) photo of items seized from Defendant's residence;

- Three (3) FBI property receipts for items seized from Defendant's residence;

- FBI Search Booklet for the search warrant executed Defendant's residence; and

- FBI 302 report of the execution of the search warrant at Defendant's residence.

The July 21, 2023, email to Attorney Hardiman also included the government's
preliminary Sentencing Guidelines calculation for the case.

On July 25, 2023, the United States made a second disclosure of discovery on a USB flash drive sent via FedEx to Attorney Hardiman.  That flash drive contained audio recordings of twenty-seven (27) jail calls made by Defendant from the Stark County Jail between June 3, 2023, and June 20, 2023, as well as three hundred thirteen (313) photos from the execution of the search warrant at Defendant's residence on June 2, 2023.

Approximately six weeks later, on September 7, 2023, Attorney Owen Kalis filed a notice of appearance in this case, indicating that he had been retained to replace Attorney Hardiman as Defendant's counsel.  ECF # 18, PageID 66-67.  Based upon an initial phone call with Attorney Kalis shortly after he joined the case, undersigned counsel for the United States understood that Attorney Hardiman had turned over to Attorney Kalis all of the discovery that had previously been provided.  However, after later discussions with Attorney Kalis, the United States provided a duplicate copy of all discovery to him on February 2, 2024, to ensure that Defendant and counsel had all of the government's evidence in the case.

On April 2, 2024, undersigned counsel sent Attorney Kalis a proposed plea agreement to review with Defendant.  Later in April 2024, Attorney Kalis contacted the undersigned and represented that he had reviewed the plea agreement with Defendant, but that before agreeing to plead, Defendant wanted to view videos of uncharged controlled drug purchases conducted by law enforcement prior to the June 2, 2023, search of Defendant's home.  Because the videos revealed the identities of confidential informants, and consistent with this Court's February 13, 2024, denial of Defendant's motion to reveal the identity of the confidential informant, the United States declined to provide those videos.  As a compromise, however, on April 24, 2024, the government provided four (4) redacted still images from one of the buy videos which showed Defendant in his kitchen weighing a quantity of drugs on a scale to provide to the informant.

3

Undersigned counsel understood from subsequent conversations with Attorney Kalis that those still images were shown to Defendant and factored into his decision to plead guilty.

On May 2, 2024, the Court conducted a change of plea hearing.  ECF Minutes of Proceedings, 05/02/2024.  At the hearing, the government and Defendant presented the Court with a written plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).  ECF # 38: Plea Agreement, PageID 169-182.  Prior to the start of the hearing, undersigned counsel engaged in discussions about the agreement with Attorney Kalis and Defendant.  During those discussions, undersigned counsel described the government's estimated Sentencing Guidelines calculations if Defendant were to be convicted at trial and compared them to the calculation in the plea agreement, noting that the plea agreement also allowed the parties to recommend a sentence outside the range resulting from the stipulated guideline computation.  Throughout the conversation, undersigned government's counsel made reference to various items of evidence that would be presented if the case proceeded to trial.  At no time did Defendant seem unaware of the evidence being discussed or give the impression that he had not seen such evidence.

Once discussion between the parties concluded, the Court began the change of plea hearing.  During the hearing, the Court reviewed the terms of the written plea agreement with Defendant, repeatedly asking if Defendant understood each item the Court addressed.  The Court's review of the plea agreement included the constitutional rights Defendant would be waiving by entering into the agreement, the statutory penalties Defendant faced for each count to which he would plead, the elements of each offense, the forfeiture of property to which Defendant would be agreeing, Defendant's waiver of appeal, the factual basis for the plea, and other matters relevant to the agreement.  After reviewing the stipulated Sentencing Guidelines calculation contained in the plea agreement, the Court asked undersigned government's counsel

to state what the government believed the calculation would be if Defendant proceeded to trial and was convicted, which undersigned counsel did.  The Court also asked Defendant if he had adequate time and opportunity to review and discuss the plea agreement with his attorney, and each time, Defendant stated that he did.  Upon the Court's inquiry, Defendant also stated that he was satisfied with the representation and advice provided to him by Attorney Kalis.

After reviewing all of the terms of the proposed plea agreement, the Court ensured that Defendant had no unresolved questions about the agreement or his expected guilty plea.  Once the Court was satisfied that Defendant would be entering a knowing, intelligent, and voluntary plea, the Court inquired how Defendant wished to plead to each count of the indictment. Defendant responded that he pled guilty to each count.  The Court accepted his plea of guilty and set the case for sentencing on August 28, 2024.

On May 13, 2024, Attorney Kalis informed undersigned government's counsel by phone that he had resigned from the practice of law, effective immediately, and that he would no longer represent Defendant in this matter.  The same day, Attorney Kalis filed a motion to withdraw as counsel for Defendant, ECF # 39, PageID 183-84, which the Court granted.  At a status hearing on June 12, 2024, Defendant advised the Court that he intended to retain new counsel to represent him at sentencing.  ECF at Minutes of Proceedings, 06/12/2024.  Ultimately, Defendant failed to retain counsel and the Court appointed Attorney James McDonnell to represent Defendant on June 25, 2024.  ECF Order, 06/25/2024.

## II.  Law and Argument

### A. Criminal Rule 11(d) requires the defendant to show a fair and just reason for the withdrawal of his guilty plea.

Federal Rule of Criminal procedure 11(d) outlines the circumstances under which a defendant may withdraw a guilty plea.  The rule reads:

**(d) Withdrawing a Guilty or Nolo Contendere Plea.** A defendant may withdraw a plea of guilty or nolo contendere:

    **(1)** before the court accepts the plea, for any reason or no reason; or

    **(2)** after the court accepts the plea, but before it imposes sentence if:

        **(A)** the court rejects a plea agreement under Rule 11(c)(5); or

        **(B)** the defendant can show a fair and just reason for requesting the withdrawal.

Under Rule 11(d)(2), a defendant may withdraw a plea of guilty after the court accepts the plea, but before sentencing, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Sixth Circuit, however, has warned that "when a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (internal alterations, quotation marks, and citation omitted). The Sixth Circuit has cautioned that this rule is "not to allow a defendant to make a *tactical decision* to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id.* (emphasis added) (internal quotation marks omitted). "That is so because the 'withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice.'" *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006).

The defendant bears the burden of establishing the grounds required to withdraw a guilty plea. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996); *Ellis*, 470 F.3d at 281. To determine whether a defendant has established a "fair and just reason" for requesting the withdrawal, the Sixth Circuit has established a non-exclusive list of factors for the court to consider:

(1) the amount of time that elapsed between the plea and the motion to withdraw it;
(2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;

(3) whether the defendant has asserted or maintained his innocence;
(4) the circumstances underlying the entry of the guilty plea;
(5) the defendant's nature and background;
(6) the degree to which the defendant has had prior experience with the criminal justice system; and
(7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Catchings*, 708 F.3d 710, 718 (6th Cir. 2013); *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).  Examining the most relevant factors here, Defendant has not presented a fair and just reason to withdraw his plea, and this Court should deny his motion accordingly.

### 1.  Time Elapsed Between Guilty Plea and Motion to Withdraw and Reason for Any Delay in Filing Motion to Withdraw

The first and second *Bashara* factors weigh against allowing Defendant to withdraw his plea.  After entering his plea on May 2, 2024, Defendant did not notify the Court of his desire withdraw his guilty plea until over two months later, by his letter dated July 5, 2024.  In the interim, Defendant learned of Attorney Kalis' withdrawal from the case on May 13, 2024, was present in Court for a status hearing on June 12, 2024, and had new counsel appointed on June 25, 2024.  Through all of that, Defendant did not indicate an intent to withdraw his plea, nor complain that he had not seen discovery or was unaware of the consequences of his plea.

The Sixth Circuit has noted that "[i]f a defendant has a swift change of heart this may indicate that the plea was entered in haste and confusion and counsels in favor of withdrawal." *United States v. Ford*, 37 F.3d 1500 (6th Cir. 1994) (internal quotations and citations omitted). But Defendant did not have a "swift change of heart" in this case.  Rather, despite opportunities to do so, Defendant failed to give any indication that he wished to withdraw his plea until more than two months after he entered it, as his sentencing date approached.  Defendant offers no reason for such delay.  Accordingly, the time elapsed between his guilty plea and his letter

7

notifying the Court of his desire to withdraw his plea, and his failure to provided an explanation for the delay, weighs against Defendant's motion.  *See United States v. Spencer*, 836 F.2d 236, 237-39 (6th Cir. 1987) (upholding denial of motion to withdraw plea filed five weeks after guilty plea); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (upholding denial of motion to withdraw plea filed 67 days after plea).

### 2.  Whether Defendant has Maintained His Innocence

The third *Bashara* factor is whether the defendant has asserted or maintained his innocence.  Here, Defendant pled guilty under oath in open court and signed a plea agreement detailing how law enforcement recovered more than 7 kilograms of cocaine, more than 3 kilograms of fentanyl, approximately 100 grams of methamphetamine, six firearms, a kilogram drug press, and over $1 million cash from his residence.  Moreover, at no point during the change of plea hearing did Defendant assert his innocence or express a desire to go to trial. Likewise, during the discussions between government's counsel, defense counsel, and Defendant prior to the hearing, Defendant never indicated that he was innocent of the charges.  Even now, in his letter to the Court and his motion to withdraw his plea, Defendant does not assert his innocence as a basis for his desire to withdraw his plea.  As such, the government submits that the third *Bashara* factor weighs against Defendant.

### 3.  The circumstances underlying Defendant's guilty plea weigh against him, since nothing in the plea colloquy suggests that his plea was involuntary or unintelligent.

Next, the circumstances surrounding Defendant's guilty plea do not support allowing him to withdraw his plea.  "A defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements."  *Owens*, 215 F. App'x at 502 (brackets in original).

Defendant does not allege any default with the nature of the change of plea proceedings. Indeed, this Court conducted a thorough colloquy with Defendant, ensuring that he understood the maximum penalties, the constitutional rights that he was waiving, the facts supporting the plea, and that he was not forced or coerced into entering the plea.

While, in his letter to the Court, Defendant asserts that he was coerced by Attorney Kalis into entering a plea of guilty, the circumstances surrounding his plea belie any claim of coercion by Defendant.  The government provided the written plea agreement to defense counsel on April 2, 2024.  Shortly thereafter, defense counsel indicated that Defendant had reviewed the agreement but wanted to see additional evidence before agreeing to plead guilty, which the government provided.  A full month after first receiving the written agreement, and after further discussions with the government, both through counsel and in person prior to the plea hearing, the Defendant entered his plea of guilty.  During the change of plea hearing, the Court provided Defendant with repeated opportunities to inform the Court that he needed more time or did not wish to proceed with the plea.  Defendant assured the Court that he was entering a plea of his own free will and that his plea was knowing, intelligent, and voluntary.

In sum, nothing in the record of Defendant's plea colloquy suggests that he was pressured into the guilty plea or that he did not understand the terms and consequences of the guilty plea. Still, Defendant's primary reason for wanting to withdraw his plea is his claim that defense counsel did not show him the discovery in the case or explain the consequences of pleading guilty.  But, as explained above, Defendant had three different attorneys prior to pleading guilty. Two of those attorneys – Attorney Hardiman and Attorney Kalis – had all of the discovery for a significant period of time prior to Defendant's change of plea.  It is difficult to believe that *both* attorneys failed to show Defendant the evidence provided by the government and to discuss with

him the potential for a plea in this case. Likewise, all of the consequences of pleading guilty were laid out in the written plea agreement that Defendant signed and indicated to the Court that he had read and reviewed. The government therefore submits that the fourth *Bashara* weighs against Defendant.

### 4. Defendant's prior criminal convictions suggest that he understood the consequences and gravity of pleading guilty.

The sixth factor is whether the defendant has prior experience with the criminal justice system. The fact that a defendant had prior contacts with the criminal justice system, especially prior guilty pleas, weighs against allowing him to withdraw a guilty plea. *See Owens*, 215 F. App'x at 502. Here, Defendant has an extensive criminal history, including six prior felony convictions, all of which involved drug possession, and all of which were resolved by Defendant pleading guilty (5 cases) or no contest (1 case). Defendant also has at least six prior misdemeanor convictions. Defendant has been sentenced to serve prison sentences at least five times. He is, therefore, very familiar with the criminal justice system and unlikely to mistakenly or unintelligently plea guilty to serious offense like those charged in this case. As such, the government submits that this factor weighs against Defendant.

### 5. The government reserves any arguments about prejudice unless and until the Court finds that Defendant has established a fair and just reason for withdrawing his guilty plea.

Finally, "the government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Benton*, 639 F.3d at 729 (quoting *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006)) (internal alterations and quotation marks omitted). Further, this Court need not consider prejudice to the government if, considering the other six factors, the defendant cannot establish grounds for withdrawing his plea. *Catchings*, 708 F.3d at 719. Defendant has

not advanced such a reason.  Given this rule, the government would reserve any arguments about prejudice unless and until the Court finds that Defendant has established a fair and just for withdrawing his plea.

## III.    Conclusion

For the foregoing reasons, the government respectfully requests that Defendant's Motion to Withdraw Plea be denied.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By:    /s/ Peter E. Daly
       Peter E. Daly (OH: 0084745)
       Assistant United States Attorney
       Federal Building
       2 South Main Street, Room 208
       Akron, OH 44308
       (330) 761-0529
       (330) 375-5492 (facsimile)
       Peter.Daly@usdoj.gov